IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| William D. Campbell, | C/A No. 3:12-cv-03042-JFA |
| Plaintiff, | |
| vs. | **ORDER ON MOTION TO DISMISS** |
| International Paper Company; Walter Scheele; Clay Ellis; and Walter Partrich, | |
| Defendants. | |

## I.  INTRODUCTION

This is an employment case initially filed in the Court of Common Pleas for Richland County. As originally filed, Plaintiff William D. Campbell asserted only state law causes of action for defamation, breach of contract, and negligence. Defendants International Paper Co. (IP), Walter Scheele, Clay Ellis, and Walter Partrich removed the action to this court based on diversity jurisdiction and then filed a motion to dismiss the state law claims. *See* ECF No. 7. Campbell then filed a motion to remand based on lack of subject matter jurisdiction, which the defendants opposed. *See* ECF Nos. 14, 18. Subsequently, the parties filed a joint motion to amend the Complaint requesting the court allow Campbell to add a claim for violation of the Age Discrimination in Employment Act (ADEA). *See* ECF No. 19. The court granted this motion, rendering Campbell's motion to remand moot.

Campbell's Amended Complaint does not substantively amend the facts pleaded with respect to his state law claims, and thus the parties agreed that the defendants' motion to dismiss would remain pending as to those claims. Defendants have not filed a motion to dismiss Campbell's ADEA claim. Thus, this Order is directed only to the adequacy of Campbell's

1

Amended Complaint with respect to his three state law claims. For the reasons discussed below, the court grants IP's motion to dismiss Campbell's state law claims.

**II.    FACTS**

The following relevant facts from the Amended Complaint are taken as true for the purposes of this motion. Campbell was employed with IP for twenty-one (21) years and maintained an outstanding performance and safety record. Amended Complaint, ¶ 10. At the time of his termination, he was a Technician at IP's wood processing facility in Eastover, South Carolina. *Id.* Campbell's job responsibilities included using a forklift to transport product between a loading stage and a railcar. *Id.* at ¶ 11. He also was charged with ensuring that safety equipment and guards were in place for the switching of railcars at the time of the railcar crew's arrival to his work location. *Id.*

In early November of 2011, several railcar crew employees complained that safety procedures were not followed in Campbell's area. *Id.* at ¶ 12. A short and hurried investigation ensued. *Id.* Various managers at IP, including the individual defendants, questioned Campbell about his implementation of the safety procedures concerning the railcar switch. *Id.* During the investigation, the defendants charged Campbell with "gross," or "critical," safety violations, including violations of safety lock, tag, and try procedures. *Id.* at ¶¶ 12, 17, 23. Campbell asserts that these charges were "false" and that he did not violate any "critical" safety lock, tag, and try procedures. *Id.* at ¶ 12. However, he also alleges that he cooperated with the investigation and admitted that he may have been guilty of "minor" or "technical" violations. *Id.* at ¶¶ 12–13, 28. Campbell also reiterated that at no time during his operation of the forklift between railcars had there been any danger to person or property. *Id.* at ¶ 12.

On November 8, 2011, IP suspended Campbell from his employment. *Id.* at ¶ 13. The defendants subsequently terminated Campbell following the conclusion of the aforesaid investigation. *Id.* According to Campbell, his termination was "false" and "pretextual." *Id.* ¶¶ 13, 17. In this regard, Campbell alleges, upon information and belief, that at the time of these events, IP had decided to reduce the number of its employees for financial reasons. *Id.* at ¶ 14. IP targeted Campbell and other employees, who, because of their age, seniority, and compensation levels, would save money to IP by their absence. *Id.* Charging the employees with performance-based terminations would also save IP from having to pay severance and other benefits. *Id.*

Further, Campbell alleges that Ellis, Scheele, Partrich, "and others" made it "publicly known" that Campbell was charged with a gross safety violation and was being fired for the same. *Id.* at ¶ 23. The defendants and "countless others" "published and re-published" these statements. *Id.* at ¶ 25. According to Campbell, this was done with "a total disregard for the truth and . . . with conscious knowledge" of the falsity of the statements. *Id.* at ¶ 23. Likewise, he alleges that the defendants' actions were "intentional and malicious." *Id.* at ¶ 25. Further, he alleges that "the termination action itself was defamatory." *Id.* at ¶ 23.

Finally, Campbell states that he "was hired and maintained his employment with IP on the basis of IP's lockout and safety policies, which provided for stated progressive discipline for stated offenses and violations." *Id.* at ¶ 27. Even if he committed a minor safety violation, he alleges that others committed the same or more serious violations. *Id.* at ¶ 28. Further, these others went unpunished or were subject to far more lenient treatment than termination. *Id.* Thus, Campbell concludes, the defendants failed to "properly interpret the provisions of IP's own policies in determining and carrying out their actions" in terminating him. *Id.* at ¶ 31.

### III. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated, however, that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading "will not do" if it merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiff must put forth claims that cross "the line from conceivable to plausible." *Id.* at 680 (internal quotation omitted). The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citation omitted).

### IV. DISCUSSION

At issue in this motion are Campbell's claims of defamation and negligence against all defendants and his claim of breach of contract against defendant IP. Each cause of action is discussed separately below.

4

*A.     Defamation Against All Defendants*

In his Amended Complaint, Campbell alleges two distinct acts of defamation: (1) he claims that the defendants published statements concerning his alleged safety violations at IP; and (2) he claims that the termination itself defamed him.  The defendants argue that the court should dismiss the first of these defamation claims primarily on the ground that he has failed to allege sufficient factual detail concerning the allegedly defamatory statements or their publication.  *See English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999) (recognizing in dicta that, in order to plead defamation, a plaintiff "should allege specific defamatory comments [including] 'the time, place, content, and listener of the alleged defamatory matter'" (quoting *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996))).  In other words, in the defendants' view, Campbell relies only on barebones allegations that the defendants "ma[de] it publicly known" that he was fired "for gross safety violations."  The defendants argue that Campbell has not identified any person to whom any allegedly defamatory statement was made or any other details of the alleged publication and that he has relied on the form allegation that the defendants "published and re-published" the defamatory statements.  Finally, the defendants argue that Campbell failed to allege facts demonstrating that any statements made were false, pointing out that he admitted to some safety violations.

Campbell argues that his pleading is sufficient to support a defamation claim.  In general, he argues that he has identified the statement at issue (i.e., that he committed a "gross" safety violation), the speakers (i.e., the individual defendants), and the reasons they made the statement (e.g., as a pretext to fire him so that IP could improve its finances).  *See* ECF No. 24, at 6–7.  According to Campbell, he has also alleged the time at which the individual defendants made the defamatory statement (e.g., surrounding his termination) and "'the where'—to the public."  *Id.* at

5

7. Further, he responds that he has sufficiently alleged that the statements were false: whereas his pleading states that he admitted to *technical* or *minor* safety violations that did not endanger anyone, it also states that the defendants' statement was that Campbell violated *gross* safety policies. *Id.* at 7 n.6.

Under South Carolina law, to prove defamation a plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged communication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Argoe v. Three Rivers Behavioral Health, L.L.C.*, 710 S.E.2d 67, 74 (S.C. 2011). Based on the court's review of the Amended Complaint, Campbell has likely sufficiently pleaded the first, third, and fourth elements of defamation above. For example, he pleaded that the statements by the individual defendants that he committed a gross safety violation were both false and intentionally made with conscious knowledge of their falsity. Although the defendants argue that he has not pleaded a plausible claim of falsity because he also alleged that he admitted to technical safety violations, there is certainly a difference between a gross violation that may endanger others and a technical, or minor, violation. A statement is defamatory if it "tends to impeach the honesty, integrity, virtue, or reputation, or publish the natural and alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation." *Smith v. Bradstreet*, 41 S.E. 763 (1902). Also, as Campbell points out, a statement is *per se* actionable (i.e., general damages are presumed to exist) where it charges the plaintiff with "unfitness in one's business or profession." *Hotzchieter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1988). A statement that Campbell committed a gross safety violation at work arguably meets both standards. Thus,

taking the allegations in the Amended Complaint to be true, Campbell has sufficiently pleaded the three of the four elements of defamation above.

However, Campbell has not sufficiently pleaded the second element of a defamation claim, publication to a third party. Nowhere in the complaint is it alleged to whom the defendants made the statements at issue. Rather, Campbell only alleges that the statements were made "publicly known" and that the defendants (and "countless others") "published and re-published" them. Amended Complaint, ¶¶ 23, 25. A pleading that merely offers such "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, the court dismisses Campbell's first defamation claim against all defendants.

Next, regarding Campbell's second defamation claim—the act of termination itself—the defendants acknowledge that it is possible for an act of termination to be actionable defamation under South Carolina law. *See Johnson v. Dillard's, Inc.*, 2007 WL 2792232, at *18 (D.S.C. Sept. 24, 2007) (citing *Eubanks v. Smith*, 354 S.E.2d 898 (S.C. 1987); *Tyler v. Macks Stores*, 272 S.E.2d 633 (S.C. 1980)). They argue, however, that Campbell has not alleged facts demonstrating that his termination carried any false and defamatory meaning. Further, defendants argue that Campbell has alleged no facts which show that the act of termination was published to anyone. Finally, defendants contend that, even if Campbell has stated a claim against IP, a claim of defamation based on the act of termination is not cognizable against the individual defendants. *Cf. Yost v. City of Charleston*, 2009 WL 4162274, at *4 (D.S.C. Nov. 24, 2009).

In *Tyler*, the South Carolina Supreme Court indeed recognized that "[a] mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain."

7

*Tyler*, 272 S.E.2d at 634 (citation omitted).  For example, in *Tyler* the defendant employer required an employee in a position of trust to take a polygraph test and administered the test over the employee's protest.  *Id.* at 633.  The employer subsequently fired the employee.  *Id.*  The employee argued that "his discharge, following the giving of a polygraph test . . . gave fellow employees and others the feeling and belief that he had been discharged for some wrongful activity" and that "this insinuation and inference of wrongdoing can amount to the publication of defamatory matter."  *Id.* at 634.  The supreme court agreed and affirmed the trial court's denial of the defendant's motion to dismiss.  *Id.*

The question in this case, then, is whether Campbell has sufficiently pleaded that the act of termination insinuated to a third party a defamatory meaning that was false and had a meaning that was plain.  Campbell asserts that, by terminating him immediately following a "hurried" investigation into alleged gross safety violations, during which "various IP managers" questioned him, the defendants insinuated that he was fired for that reason.  As explained above, Campbell has sufficiently pleaded that such an insinuation is false and defamatory and that it is *per se* actionable.

However, he has not sufficiently pleaded that the insinuation had a meaning that was plain to any third party.  If another employee knew of the investigation and Campbell's subsequent termination, it is possible the employee might infer that Campbell had been terminated for a gross safety violation.  Importantly, though, there is very little in the Amended Complaint which plausibly suggests that anyone other than the individual defendants and Campbell knew of the investigation.  In this regard, the Amended Complaint states that "a hurried investigation ensued because several railcar employees complained that safety procedures were not followed in Mr. Campbell's area" and that "various IP managers," including

8

the individual defendants, questioned him. Amended Complaint, ¶ 12. Even if the court were to interpret this to mean that some employees knew that Campbell was being investigated, absent the formulaic assertions regarding publication described above, Campbell does not allege in his Amended Complaint that any third party knew he was terminated, much less why. This does not rise to the level of plausibility *Iqbal* and *Twombly* require. For this reason, the court also dismisses Campbell's second claim of defamation against all defendants. Because the court finds that the facts pleaded in the complaint do not state a claim for defamation based on the act of termination, it is not necessary for the court to consider whether such a claim is cognizable against the individual defendants or only against their employer.

### *B.     Breach of Contract Against IP*

As noted above, Campbell also asserts a cause of action for breach of an employment contract against IP. South Carolina presumes employment to be at-will, meaning employment that "is generally terminable by either party at any time, for any reason or for no reason at all." *Prescott v. Farmer's Tel. Co-op.*, 516 S.E.2d 923, 925–27 (S.C. 1999). In certain circumstances, however, employers may alter an employee's at-will status by the terms of an employee handbook or policy, giving the employee, when fired, the right to bring a cause of action for wrongful discharge based on breach of contract. *See Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005). In this regard, "[m]andatory, progressive discipline procedures may constitute enforceable promises." *Id.* at 698. These procedures "typically provide that an employee may be fired only after certain steps are taken," and when they are "definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id.* On the other hand, "general policy statements must be definitive in nature, promising specific treatment in specific situations" to be

9

enforceable in contract. *Id.* In *Hessenthaler*, the Supreme Court of South Carolina found that the discipline section of an employer's handbook did not contain any enforceable promises, in particular highlighting that the handbook stated that "employees could be fired 'at any time' and for any reason that is in the [employer's] 'best interests.'" *Id.* at 698 n.7.

In this case, the Amended Complaint contains the following allegations about the alleged contract:

> 27.  Mr. Campbell was hired and maintained his employment with IP on the basis of IP's lockout and safety policies, which provided for stated progressive discipline for stated offenses and violations and which was [sic] relied upon and followed according to practice and procedure for many years.
> 28.  In over twenty-one (21) years of work with IP, Mr. Campbell had an exemplary record and even if he committed a minor safety violation, others admittedly committed the same or more serious violations and went unpublished [sic] or were subjected to far more lenient treatment than the Plaintiff who was terminated.
> 29.  Mr. Campbell is entitled to all damages proximately caused by the breach of contract referenced, including sustained loss of employment, loss of earning capacity[,] and humiliation and embarrassment, all of which will continue into the future.
> . . . .
> 31.  The Defendant IP and the Individual Defendants Ellis, Scheele, and Partrich . . ., acting within the course and scope of their employment, failed to properly interpret the provisions of IP's own policies in determining and carrying out their actions referred to herein concerning Mr. Campbell.

Thus, the Amended Complaint alleges that "IP's lockout and safety policies" constituted an employment contract and that IP breached this contract by terminating Campbell. It appears to suggest that the provision(s) IP breached provided for "progressive discipline for stated offenses." It further appears to suggest that, had the individual defendants properly interpreted its own policies, Campbell would not have been terminated and instead would have received more lenient treatment, as did other employees. As can be seen, however, the Amended Complaint contains almost no information regarding the specific terms of the "lockout and safety policies." It likewise does not specifically allege why these policies constitute an employment

10

contract, instead providing only the conclusory assertion that Campbell "was hired and maintained his employment with IP on the basis" of these policies. If the court were to look only to the Amended Complaint, then, Campbell has not pleaded facts sufficient to create a plausible claim for relief for breach of contract.

Nevertheless, it appears that IP has identified the "lockout and safety policies" to which Campbell refers, and it has attached this document to its motion to dismiss.[1] *See* ECF No. 7-2. IP argues that the policy at issue addresses employee misconduct only in permissive terms, and although it sets forth progressive disciplinary steps that managers may use as guidelines, it neither promises specific treatment in any specific circumstance nor promises continued employment. Similarly, IP highlights the policy's use throughout of words such as "may" and phrases like "depending on the circumstances."

Campbell acknowledges that the policy contains permissive language, but he emphasizes that it also contains mandatory language. In this regard, he points to the use of words and phrases such as "must," "should," and "will result in . . . ." Further, he notes that the policy identifies a "distinctive three-step formal discipline process," which is summarized in a "Discipline Process Flowchart." Campbell argues that a policy containing both permissive and mandatory language is at least ambiguous, and thus there is a jury question as to whether it creates a contract. *See Hessenthaler*, 616 S.E.2d at 697.

The court finds as a matter of law that the policy that IP has identified does not create an employment contract. *See id.* (noting that a court may "intervene to resolve the handbook issue as a matter of law" where "the handbook statements and the disclaimer, taken together, establish beyond any doubt [that] an enforceable promise either does or does not exist" (citation and

---

[1] Notably, the Fourth Circuit has held that the court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

internal quotation marks omitted)).  Importantly, in two places, the policy disclaims any contract of employment.  The policy states on its first page that it "does not create a contract of employment and does not alter the at-will relationship between the Company and the employee."[2]  Further, when detailing the "Decision Making Process for Safety Accountability," it states (in all caps and underlined): "this process is intended as a manager reference tool and is not a contract of employment, express or implied, between International Paper and its employees."  Additionally, throughout the policy it is made clear that there are circumstances in which the normal disciplinary steps will not apply.  For example, when discussing the three-step formal discipline process, the policy also notes that possible exceptions to the process include: "skipping steps, not deactivating a disciplinary step in the identified time frame, termination for a first offense, or utilizing other consequences."  In two places the policy includes the statement that IP "reserves the right to make exceptions to the steps outlined in this policy based on the circumstances in each case."  Finally, the policy notes that IP may "modify or eliminate this policy at any time in its sole discretion."  In short, the policy does not guarantee specific treatment in specific situations, and thus there is no basis for an employee to expect continued employment based on the policy.

Based on the above, IP's progressive discipline policy is not an employment contract.  Therefore, Campbell has not stated a plausible claim for breach of contract.  Accordingly, the court grants IP's motion to dismiss this claim.

    *C.*    *Negligence Against All Defendants*

---

[2] It appears that this disclaimer would have been dispositive if it had been underlined in all capital letters and signed by Campbell.  S.C. CODE ANN. § 41-1-110 provides: "It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed.  For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee."  Nonetheless, the disclaimer is certainly an important factor in whether the policy is contractual in nature.

12

Finally, Campbell's Amended Complaint includes a cause of action for negligence against all defendants. As an initial matter, the defendants argue that this cause of action cannot proceed because it is based solely on the alleged breach of contract. More particularly, the source of the duty at issue is the alleged contract itself (the discipline policy), and the defendants' actions which allegedly breached this duty are the same actions which Campbell alleges breached the contract. The defendants argue that Campbell is therefore limited to a breach of contract cause of action, citing *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."). However this rule applies only in the situation where a plaintiff is suing solely for economic loss. *See id.* In his negligence cause of action Campbell also alleges non-economic damages, such as embarrassment, humiliation, and mental distress, and thus the economic loss rule is not dispositive.

In any event, the defendants also argue that the court should dismiss this claim because South Carolina does not recognize a cause of action for negligent termination of an at-will employee. Again, the defendants assert that the discipline policy discussed above did not alter Campbell's at-will status. They then contend that because an employer has no duty to ensure that an at-will employee is discharged only for good cause, *see Hand v. SunTrust Bank, Inc.*, 2012 WL 3834859, at *4 (D.S.C. Sept. 4, 2012); *Gause v. Doe*, 451 S.E.2d 408, 409 (S.C. Ct. App. 1994), South Carolina does not recognize a cause of action sounding in negligence against the employer when the at-will employee is terminated. In his Response, Campbell continues to argue that IP owed him a duty to properly interpret its disciplinary policy, but he cites no authority contrary to *Gause* in support of his argument.

As explained above, IP's discipline policy does not constitute an employment contract, and Campbell has not alleged the existence of any other contract. Thus, Campbell has not alleged that he was anything other than an at-will employee.[3] In such a case, he cannot state a claim for relief based on negligence because he cannot show that IP had a duty to properly interpret its disciplinary policy in discharging him. In other words, IP could terminate Campbell "at any time, for any reason, or for no reason at all." *Gause*, 451 S.E.2d at 409. Therefore, the court should dismiss Campbell's negligence claim against all defendants.

## V. CONCLUSION

Based on the foregoing, the court grants the defendants' motion to dismiss Campbell's state law claims of defamation, breach of contract, and negligence. First, regarding Campbell's defamation claim, Campbell's Amended Complaint does not plausibly allege that the defendants' statements were published to any third party. Likewise, even though the Amended Complaint alleges that the act of termination itself insinuated a false and defamatory meaning, it does not plausibly allege that the act of termination was insinuated to any third party and that its meaning was plain. Although Campbell has already filed an Amended Complaint, as discussed at the hearing on this motion, Campbell may be able adequately plead his defamation claim if given another opportunity. Therefore, the court dismisses Campbell's defamation claim *without* prejudice and with leave to file a Second Amended Complaint realleging this cause of action within 45 days of the date of this Order.

Next, regarding Campbell's breach of contract claim, the court finds as a matter of law that IP's disciplinary policy does not constitute an employment contract. Because Campbell cannot adequately plead this claim even if given another opportunity, the court dismisses it *with*

---

[3] Indeed, Campbell is willing to assume that he was an at-will employee for the purpose of his negligence cause of action. *See* ECF No. 24, at 10 n.7.

*prejudice*.  Finally, regarding Campbell's negligence claim, Campbell has not plausibly alleged that he was anything other than an at-will employee.  Thus, he cannot state a claim for negligence because South Carolina does not recognize a cause of action for wrongful termination of an at-will employee.  Accordingly, the court also dismisses this claim *with prejudice*.

    IT IS SO ORDERED.

May 3, 2013                                             Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge